My name is Robert Bartels. I represent the appellant and petitioner John Wesley Heiden. Also at counsel table is Michelle Mullinex, who is a law student at Arizona State University. Will you be doing all the arguments? I will. All right, thank you. And I would like to reserve a couple of minutes for the rebuttal. I'd be happy to answer any questions the court might have about any aspects of this case, but I do not have anything to add to our briefs with respect to the merits of Mr. Heiden's due process claim. With respect to the exhaustion issue, however, there are a couple of points that I think are not made clearly enough in our briefs, and I'd like to address those. An important part of our position here on exhaustion is that the state and federal due process standards that are applicable to this particular case are identical. The Arizona courts have not distinguished between federal and state due process with respect to this kind of claim. What's the case that you feel most strongly supports you on that issue? Well, Your Honor, that's the point on which I think our brief is not quite adequate. Our briefs do cite that case. It's on page 24 of our opening brief. The case is State X. Rel. Romley. That's 836 P. 2nd, 440. The particularly important part is page 449. That case deals with the same due process right as this case, the right to present evidence that's critical to the defense. And in that context, the Romley court said, and now I'm quoting, the defendant has a due process right under the federal and Arizona constitutions to present a defense, unquote. And then immediately there's a citation to Chambers v. Mississippi. In the other cases that you've cited, Youngblood and I believe it was Gonzalez, it seems to me that the Arizona state courts have not really analyzed the reliability issue. They've gone to the question of whether or not the excluded evidence was essential or critical for the defense, but they haven't really talked about reliability in the way that the federal cases have discussed reliability. And so I have some serious concern that there may not be identicality as would be required to get beyond the procedural bar. Your Honor, the word reliability I think has not come up as much, but there's no indication. For example, Gonzalez is dealing with almost exactly the same kind of situation. Gonzalez has been overruled, though, by Mott. I'm sorry, Your Honor, I didn't know that. Was it State v. Gonzalez overruled? Not that I know of. Okay. And I'm pretty sure it wasn't overruled. I don't believe it has been, Your Honor. That was a diminished capacity case in Arizona? Well, there's a case called Mott that changes the law with respect to the existence of a diminished capacity defense, but with respect to the due process issue and the admissibility of evidence on that, I don't believe Gonzalez has been affected by Mott. That's the issue that we're concerned about here. The other cases that we've cited indicate they're not all exactly in this area in terms of right to present a defense, though, for example, Youngblood is in an area that's very closely related to that, the failure to disclose or failure to preserve exculpatory evidence which the defendant might have used to present a defense. There's really never been any case that I'm aware of that indicates that in any area, the Arizona courts are going to apply the Arizona due process clause differently. There was discussion of that in Youngblood, to be sure, but in the end, the Arizona court adopts the test. Let's say you can get past that, and if you look at the controlling Supreme Court cases dealing with reliability of proffered evidence, being Chambers and Crane, both holding for exclusion of evidence to violate the federal due process right to fully present a defense, excluded evidence must be reliable, critical to the defense theory. Can you explain, then, how the Arizona court's exclusion of the expert testimony as unreliable was subjectively unreasonable application of either Chambers or Crane? Well, Your Honor, I don't know that the Arizona courts ever excluded this evidence as being unreliable. I don't think anybody had any quarrel. Well, but if you get past the exhaustion issue, you've got to show an unreasonable application, correct? Oh, yes, Your Honor. And if the area is pretty nebulous and it's not that settled, that's going to be an uphill battle for you. Well, Your Honor, I think that the issue, then, is we're not looking at the application that actually was made because the Arizona courts never applied Chambers or Crane to this particular situation. They ignored the due process issue. I think it is fair to say that this court has to look at whether a reasonable state court could have. Did your client's defense depend on expert testimony? Oh, absolutely, Your Honor. This is a case very much like Crane. I don't think you can really distinguish Crane. This is a case in which there's the alleged victim's testimony that there was sexual conduct. There's Mr. Hyten's testimony that there was not. And then there are his statements to the police. And that's what becomes the critical point. Crane did not involve expert testimony, though. I mean, the testimony in Crane that was excluded was the testimony of the uncle of the defendant who had observed the interrogation and confession of the defendant. And its exclusion was impermissible because it went right to the issue of voluntariness of the confession, which the jury could properly consider. This is not a case of a percipient witness that we're dealing with here. Dr. Offshee, in this case, comes in without ever having done much of anything other than testifying in 80-some-odd cases. He didn't view the confession on the video of the petitioner in this case, nor did he involve himself in the facts of this case. Well, Your Honor, if I may come back to Crane and then talk about Dr. Offshee. In Crane, the evidence that was excluded was simply testimony about the setup of the interrogation room and physical circumstances, and the trial court wouldn't allow that testimony. And the Supreme Court reversed, not because of the importance of that evidence to voluntariness, but rather to the credibility or the truthfulness of the confession. And the court, the Crane decision, turns on that distinction. And that's what's at issue here as well. You've about used your time. Do you want to save a minute for? I think I'd better finish up this point, Your Honor. Dr. Offshee wasn't present for the confession, but he did analyze the transcript of the confession in great detail. And in the pretrial hearing, he went into that in substantial detail. The jury saw the videotape, didn't they? Yes, Your Honor. They got to see the confession. They did not get to see any testimony by Dr. Offshee. I understand that. You were going to have Dr. Offshee say, I've not interviewed any of the people here, I didn't see the videotape or anything, but these techniques or processes used by the police would prompt improper responses for a defendant, and sort of explain all that to the jury. That's correct, Your Honor. The jury was going to look at the tape, and the jury could tell from looking at the tape as to the voluntariness and reliability of the confession, couldn't they? No, Your Honor, no. I think the point of Dr. Offshee's testimony is that juries cannot appreciate the extent to which certain interrogation techniques can produce false confessions. That's what Mr. Hyden was deprived of here. And Dr. Offshee did, in his pretrial testimony, he went through what he had available, which was the transcript of the confession, and said, well, here's an example of a technique, and we know that this is one of the techniques that has a tendency to produce false confessions, not just voluntary confessions. That's information that a jury does not have. And compared to the evidence in the Crane case, Dr. Offshee's testimony was both more reliable and more important. Thank you for your comments. Your time has expired. May it please the Court. My name is Carla Hodes DeLore. I'm an assistant attorney general from Arizona representing the respondents. Ms. DeLore, is it the federal requirement of reliability that makes the two tests of constitutionality, state and federal, different? Yes, well, yes. And before I was going to start off, before we even get to the standard of whether the state standard is the same as the federal standard, it's first important to point out that Petitioner didn't even raise a state due process claim to the Arizona Court of Appeals. When he presented his issue to the Court of Appeals that the trial court aired in precluding his expert testimony, he presented it as a state evidentiary issue. And it was not until the last sentence of his argument that he said, and the denial of the preclusion of my expert testimony denied me due process. And that was it. He just said due process and then he cited two state cases, one of which discussed the due process but didn't even discuss it in full. I suppose he did raise it. If he did raise it, are the standards different? The standards are different. And in Arizona, first of all, we know of no cases in Arizona, first of all, when it comes to evidentiary rulings where Arizona courts resolve evidentiary rulings and the preclusion or admission of evidence under the Arizona rules of evidence. They do not then go and do a separate state due process analysis. We know of no cases where the Arizona courts have done that. They've just simply looked and said, does it violate the rules of evidence? And if it does, is it harmless or not? You don't even get to the second one. That's a constitutional objection that's made. Then what do the state courts, Arizona courts do? If there's a constitutional objection based on the evidence, the Arizona courts have resolved it on the rules of evidence. We know of no cases where the Arizona courts have analyzed it under a state due process claim, which clearly shows that the standards are different in that case. And there is question, as Judge Miller pointed out, there is question that the state due process standard and the federal due process standard in this context aren't even the same. Gonzales was overruled by Mott, as you pointed out. And there are, for instance, in Youngblood, in state versus Youngblood, the dissent in the majority, the only thing they could basically agree on in that case was the fact that the state due process and federal due process claims were not coterminous. Not coterminous. And furthermore, in state versus Melendez, in that case, the courts, when the, let me see, when he, in state versus Melendez, that concerned whether a defendant's communications with another inmate who was acting as his jailhouse lawyer, whether those communications were privileged or not. And in that case, he raised a state due process and a federal due process claim. The state analyzed that, you know, dealing with privileged communication, that issue, under the state due process issue. It found in that case that it would be fundamentally unfair to allow in those communications. The court then stated that because it was, we find it fundamentally unfair under the state due process claim, we don't need to analyze it under the federal due process. If the state due process and federal due process standards are identical and coterminous, there was no reason for the court to make that second statement and say, well, then, therefore, we don't need to analyze it under the federal. They could have just come out and said, we find it violates both, and they didn't. But before we even reach whether or not the standards, state due process and federal due process standards are the same, it's important to first point out that this court has consistently held that the petitioner needs to alert the state courts that he is raising a federal claim. And in this case, he clearly did not alert the state courts. The Supreme Court says if the standards are the same, it's an open question, and maybe we'll consider that a federal review would be appropriate. The Supreme Court has left it open, but the reason why this court shouldn't say citation of a state claim that is identical to a federal claim is sufficient is for reasons of comity. And in O'Sullivan v. Burkle, the United States Supreme Court specifically said that comity lies at the core of the exhaustion requirement. And in that case, they said, comity dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review the claim and provide any necessary relief. So it's only appropriate for a federal court to step in and review a state court decision when the prisoner has alleged a federal claim to begin with. Otherwise, if you have a state court solving state court issues, and then a federal court later comes along and says, oh, we think these standards are the same, that's going to allow a federal court to review, to interfere with that state court decision, which completely undermines the whole setup of the system and the comity reason. So this court shouldn't even. On the issue of identicality, if we can get beyond the threshold issue of whether due process was raised in the state court, and it may well have been, in any event, on identicality, the primary cases cited by the petitioner being the Youngblood and Gonzales cases really didn't get into that reliability prong of the two-pronged analysis that Crane and some of the other chambers and some of the others talk about. Your opponent cites now state XREL Romney v. Superior Court. I listen carefully to whether there be any reference to reliability as that case is being discussed. Are you familiar with the case, and if so, is reliability discussed? I'm familiar in the case in that that case is distinguishable from the case at issue in that that case didn't concern the same evidentiary ruling issue that we have in this case, the preclusion for admission and evidence. In that case, the issue was more centered around the disclosure of the victim's medical records and the right to discovery, which is, you know, different than this case. That's, without misrepresenting the case, that's about all I can say. The evidence wasn't part of the analysis. No. It focused on the disclosure of the victim's medical records and did they have a right to discovery in that case. And although this Court should not reach the merits, the underlying merits of this claim, because the district court found it to be perceivably defaulted, and it is perceivably defaulted. What would be your best argument that the excluded expert testimony was not critical to the defense? Oh, different reason. The reason why it wasn't critical to defense is, first of all, that he was able to present a defensive trial. His defensive trial was that he never had sexual relations with his niece at all and that she was lying. He was able to present that testimony. The Dr. Esplin, which is one of the two. But he had that confession. So he had to deal with that. Right. He had the confession and he had to deal with that. And the way they dealt with that is they, Petitioner's Counsel, cross-examined the detectives extensively about their interview training and their techniques. And they also admitted into evidence the manuals, the Reid nine-step interrogation manuals, which they wanted to discuss. So they admitted into evidence the interview technique manuals for the jury to see and they questioned the detectives about their interview techniques and training. They also, although they precluded Dr. Oshie completely from testifying, they did allow Dr. Esplin to testify, but they just limited his testimony as to what exactly he could testify to. But he was able to testify to the Petitioner's emotional immaturity status, his personality characteristics, his intellectual ability, and his susceptibility to influence. And that's exactly what they wanted to show. They wanted to show, look, here he's, you know, maybe not the sharpest knife in the drawer and his mental ability is not that great and he's susceptible to influence and look how easily he was coerced by the police interrogation. And they were able to get out his susceptibility and they were able to talk about the, you know, interview techniques and training and they did have the manuals. So they were able to take all that, take that information. And so he was able to present a defense. It wasn't like he was completely devoid of any defense whatsoever. But as I said before, if this court wants to reach the merits, what this court really should do is remand it to the district court and the district court should then be able to decide whether or not it wants to adopt the report and recommendation which did discuss the merits of the case. Thank you. This matter was stamp submitted.
judges: Thompson, Callahan, Miller